702 So.2d 1154 (1997)
STATE of Louisiana, In the Interest of J.K.
No. 97-336.
Court of Appeal of Louisiana, Third Circuit.
October 29, 1997.
Craig Steve Gunnell, Jennings, for Kenneth Kirkman Jr.
Jacquelyne Joe Heinen, for Louisiana, Dept. of Social Services.
Charlene Melancon, for Jeff Davis Parish O.C.S.
Richard Martin Arceneaux, Jennings, for Penelope Powers Nuttall.
David Emile Marcantel, Jennings, for John Taylor Seth Kirkman.
Before YELVERTON, COOKS and GREMILLION, JJ.
COOKS, Judge.
Kenneth Kirkman, Sr., appeals the trial court's judgment terminating his parental rights. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On August 14, 1991, J.K. was born in Santa Rosa County, Florida. The mother of the child is Penelope Nutrall Powers. She alleges Kenneth Michael Kirkman is the biological father of the child. Kirkman does not dispute he is the child's father. On December 10, 1993, the child was removed from the custody of the mother, who severely abused him physically, and placed in the State's protective custody. The child was adjudicated a "Child in Need of Care" on December 14, 1993. He has remained continually in the State's custody.
*1155 On October 10, 1996, the State of Louisiana filed a Petition to terminate the parental rights of Penelope Nutrall Powers and Kenneth Michael Kirkman. Regarding Kenneth Kirkman, the petition initially alleged he deserted and abandoned the child. Subsequently, the petition was amended to raise abandonment only as a ground for terminating his parental rights. Steve Gunnell was appointed to represent Kenneth Kirkman. On October 25, 1996, Gunnell mailed a certified letter to Kirkman's mother's address advising him of the court proceeding along with a copy of the petition. A return receipt shows it was signed on October 29, 1996 by Tracy Kirkman. On December 1, 1996, Gunnell received a letter from Kenneth Kirkman. The return address of the letter was Rowan County Detention Center, 115 West Liberty Street, Salisbury, North Carolina. Two weeks later, Gunnell received a second letter from Kirkman requesting that he file a motion seeking postponement of the hearing to a date after his (Kirkman's) release from jail. The motion was filed and denied by the juvenile court. After the hearing, the court rendered judgment terminating the parental rights of both parents. The portion of the judgment terminating the mother's parental rights is not contested on appeal. However, Kenneth Kirkman has appealed the juvenile court's ruling denying his request for a continuance and that portion of the judgment terminating his parental rights on the grounds of abandonment.

ANALYSIS
Article 1032 of the Louisiana Children's Code provides:
Upon a showing of good cause and notice to the opposing party, the court may grant, deny, or restrict a requested continuance of the proceeding in accordance with the best interests of the child.

(Emphasis Added)
An examination of the record reveals that Kenneth Kirkman did not have any contact with his child or provide any support for him since birth. The State attempted on several occasions to locate the father and inquire if he could provide a stable and safe home for his son. Eventually, Christy Callens, a case manager with the Office of Community Services, located Kenneth Kirkman in North Carolina. On January 3, 1995, she spoke with him on the telephone. At that time Kenneth Kirkman expressed a desire to have his son come and live with him. Callens testified she explained in detail to Kirkman his parental rights and the problems his son was experiencing as a result of prior abuse. The case manager stressed to Kirkman the importance of developing a paternal relationship with the child. Callens testified she recommended he send photos, letters and cards to the child. Thereafter, she addressed several certified letters to Kenneth Kirkman. The letters stressed further that consistent participation was necessary to develop a father-son relationship and that inaction on Kirkman's part could result in the loss of his parental rights. Callens received special permission from the Louisiana state office to personally intervene in the interstate process hoping to expedite Kirkman's home study.
In August 1995, Callens returned to school, and a new case manager, Charlene Melancon, was assigned. After the January 3, 1995 phone call Callens never heard from Kenneth Kirkman again. Melancon testified she received correspondence from the North Carolina Social Services in November, 1995, indicating they had attempted to complete a home study on Kenneth Kirkman but could not do so because Kirkman would not cooperate. At this point Melancon attempted to get in touch with Kirkman, but could only reach his mother, who informed her that Kirkman, his girlfriend and their baby were living with her. The mother further questioned her son's ability to care for another child, and questioned whether he was the child's biological father. Melancon left her number with Kirkman's mother and requested that Kirkman call her as soon as possible.
On May 15, 1996, Melancon again called Kirkman's mother. On this occasion, Kirkman's mother told Melancon he had moved out of her home but she did not know the address. After Kirkman's mother indicated she would see him in a few days, Melancon again left her number asking that Kirkman call her. Kirkman did not call her. Kirkman *1156 never visited his son, addressed any letters to him or provided one dime for his support. Despite his apathy and failure to show any interest in the well being of his son, Kirkman addressed a letter to his attorney expressing that he did not understand why the State was trying to terminate his rights. The answer to Kirkman's question is obvious. For more than a year workers for the State attempted to excite his alleged "fatherly" interest when he was a free man. He failed to show any. He never attempted to contact his child, nor did he return any of the phone calls placed to him. From his jailhouse cell, Kirkman finally responded and now wishes to have his day to convince the court in person that he "really" cares. A continuance, if granted, would have added an additional half-year delay at a minimum before trial could commence. Kirkman argues the State would not have been prejudiced by the granting of the continuance. Maybe so, but the child would have been. He was four and a half years old at the time of trial, and had been in foster care for over three years. The case worker testified, as a child ages, the chances of adoption lessen. Considering Kirkman's prior "do nothing" displays since his child's birth, we cannot say the trial court erred in finding a continuance was not in the child's best interest.
Kirkman also contends the State failed to prove by clear and convincing evidence that he abandoned his child. Parental rights to the care, custody, and management of children is a fundamental liberty interest warranting great deference and vigilant protection under the law. State in the Interest of Q.P., 94-609 (La.App. 3 Cir. 11/2/94); 649 So.2d 512. On this basis, the Louisiana legislature has imposed statutorily strict procedural and evidentiary requirements which must be met before issuance of a judgment terminating parental rights. The evidentiary standard established in termination cases mandates that the State present proof by clear and convincing evidence of the parents' failure to comply with all the enumerated conditions relied upon in the specific paragraph(s) of Louisiana Children's Code Art. 1015 before terminating parental rights. State in the Interest of J, 582 So.2d 269 (La.App. 1 Cir.), writ denied, 583 So.2d 1145 (La.1991). However, we review the record for manifest error in determining whether the lower court properly applied the clear and convincing evidentiary standard. Rosell v. ESCO, 549 So.2d 840 (La.1989).
To obtain a judgment terminating parental rights on the grounds of abandonment, Louisiana Children's Code Article 1015(9) requires proof of the following elements:
(a) The child has been abandoned by his parent for a period of at least four months.
(b) The parent has failed to provide for the child's care and support, without just cause, thus demonstrating an intention to permanently avoid parental responsibility.
Thus, the State is required to prove that Kirkman abandoned his child for a period of at least four months and that he failed to provide for his care and support without just cause. State in the Interest of JL, 93-352 (La.App. 3 Cir. 5/18/94); 636 So.2d 1186. Ultimately though, the juvenile court is charged with determining whether the totality of the circumstances indicates a parent intended to permanently avoid parental responsibility and abandoned the child. State in the Interest of Q.P., 649 So.2d 512; State in the Interest of P.R.B., 622 So.2d 716 (La. App. 5 Cir.1993). After reviewing the record, we cannot say the trial court erred in concluding the State proved by clear and convincing evidence that Kenneth Kirkman abandoned his son.

DECREE
For the foregoing reasons, the judgment terminating Kenneth Kirkman's parental rights is affirmed.
AFFIRMED.