NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-1118

STATE OF LOUISIANA
IN THE INTEREST OF C.A.D.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
KAPLAN CITY COURT
PARISH OF VERMILION, STATE OF LOUISIANA
JUVENILE CITY COURT DOCKET NO. J-3353
HONORABLE FRANK E. LEMOINE, CITY COURT JUDGE

\*\*\*\*\*\*\*\*\*\*

OSWALD A. DECUIR
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, J. David Painter, and James T. Genovese, Judges.

AFFIRMED.

Jo Ann Nixon
Attorney at Law
129 W. Pershing Street
New Iberia, La 70560
(337) 369-7437
Counsel for Appellant:
        A. D.

Debra K. Basile
Attorney at Law
825 Kaliste Saloom Road
Brandywine I, Room 218
Lafayette, LA 70508
(337) 262-5955
Counsel for Appellee:
        State of Louisiana, Department of Social Services

**DECUIR, Judge.**

C.A.D. is the eight-year-old daughter of A.D. and B.L. In January of 2006, C.A.D. was removed from the home of her mother, A.D., after allegations of sexual abuse by the mother's boyfriend arose. C.A.D. was adjudicated a child in need of care and has been in the custody of the State of Louisiana, Department of Social Services, Office of Community Services since that time. The State filed a petition to terminate the parental rights of A.D. and B.L., which the trial court granted, freeing the child for adoption. A.D. now appeals the judgment of the trial court terminating her parental rights. B.L. neither appealed nor answered the appeal, and the judgment is now final against him. For the following reasons, we affirm.

## STANDARD OF REVIEW

A parent's right to the care, custody, and management of his or her children is a "fundamental liberty interest warranting great deference and vigilant protection under the law." *State ex rel. Q.P.*, 94-609, p. 4 (La.App. 3 Cir. 11/2/94), 649 So.2d 512, 515. The evidentiary standard governing termination cases requires the State to present proof by clear and convincing evidence of each element of the specific grounds for termination as specified in La.Ch.Code art. 1015 before a court may proceed with terminating a parental relationship. *State ex rel. D.H.*, 06-1041 (La.App. 3 Cir. 3/7/07), 953 So.2d 992, *writ denied*, 07-673 (La. 4/27/07), 955 So.2d 698. An appellate court must review the record for manifest error in determining whether the lower court properly applied the clear and convincing evidentiary standard. *State in the Interest of J.K.*, 97-336 (La.App. 3 Cir. 10/29/97), 702 So.2d 1154.

A.D. argues that the trial court erred in terminating her parental rights because she was in substantial compliance with the case plan and because termination of her rights is not in the best interests of the child. Conversely, the State contends the

grounds for termination set forth in La.Ch.Code art. 1015(5) have been proved with clear and convincing evidence and the best interests of the child require termination.

After a thorough review and evaluation of the record, we are convinced that the evidence supports the findings of the trial court with regard to each element of Article 1015. The trial court provided extensive written findings which we excerpt and adopt as our own:

A. **Article 1015 Findings-Mother:**

**1. Lapse of One Year.**

The minor child, [C.A.D.'s] custody was removed from the mother and placed with the Department by oral instanter order of this court on January 19, 2006. On August 30, 2007, the date of filing of the petition for termination of parental rights, the child remained in custody of the Department, continuously, since her removal January 19, 2006, more than one year. Sworn evidence of record clearly establishes this necessary finding, and such evidence is otherwise un-contradicted.

**2. Approved Case Plan-Substantial Parental Compliance.**

On June 9, 2006, this Court, on its own motion, issued a rule for constructive contempt to the father and mother. The rule alleged that the mother was failing to work toward correcting conditions requiring the child to be in care, provide financial support to the child, maintain employment to provide financial support and a stable and safe environment for the child to facilitate reunification; and regularly visit with the child and to interact appropriately at visits.

The contempt rule was set for hearing on June 15, 2006, the same date earlier set for a review hearing. At the hearing, the court advised the mother and father that the rule for contempt had issued by the court for what appeared to be several areas of non-compliance, and rendered an admonition, concerning the consequences of non-compliance, that is, the potential consequences of being held in contempt, as well as, termination of parental rights, and further, ordered that they take steps necessary to comply with the case plan, and continued the contempt hearing for 90 days, allowing sufficient time to purge themselves of any contempt and correct any non-compliance.

On September 21, 2006, the matter again came up for review and on rule for constructive contempt for non-compliance with the case plan. After hearing the evidence, both the mother and father were held in constructive contempt. The Court found a knowing and willful failure on the part of the mother to keep the Department apprised of her

2

whereabouts, cooperate with recommended psychological evaluation and treatment, failure to cooperate by not allowing her case worker to view and evaluate her living accommodations for suitability, and failure to maintain support payments, which were in arrears in excess of two months without cause. The mother was sentenced to imprisonment on a work release basis, to pay all arrearages within 60 days, and further, attend a psychological evaluation and care, if found necessary, by a mental health professional; and upon payment of at least one half of the arrearages and once she had secured an appointment and proof provided of her attendance for psychological evaluation, thereby purging herself of contempt, she would be paroled upon specified conditions.

Despite strong admonitions and written conditions of parole, on October 13, 2006, the court issued a rule to revoke the mother's parole for failure to comply with the case plan, and specifically, for failure since her parole to attend her second appointment with her psychologist, set for October 12, 2006.

On October 19, 2006, the mother appeared in court with new representation; evidence was adduced that the mother had been reminded October 9, 2006 by the Department of her appointment, which she missed and was set for October 12, 2006. Court advised the mother that her parole would not be revoked, but again, admonished her that it was her responsibility to comply with the case plan, and the result of her continued failure to comply may be termination of her parental rights.

Article 1036C (1-7) of the *Louisiana Children's Code* proscribes seven (7) examples of the lack of parental non compliance, within the purview of Article 1015(5). The mother repeatedly failed to keep the department apprised of her whereabouts and significant changes affecting her ability to comply with the case plan for services. *Louisiana Children's Code*, Article 1036C (3). The mother's obligation to keep the department informed of her whereabouts is one of the court's routine admonitions given the mother at her periodic appearances before this court, during the pendency of the CINC proceedings. In particular, when the mother's parole came up on a rule to revoke October 19, 2006, mentioned above, the mother complained that she was at work, when the state's worker arrived at her last known address to pick her up for her second mental health appointment, and that no one advised her where she would be picked up for transport to her appointment. Although the court did not revoke her parole, the court found, and so advised, that it was [A.D.'s] responsibility to advise the Department of her whereabouts and to confirm time and place of transport. The court advised that her failure to do so, was a failure to comply with her case plan, and the result of her continued non-compliance may be termination of her parental rights.

At the trial, the case manager testified that [A.D.] moved her place of residence on a least five occasions, without informing her, the case manager, of the moves. As well, the mother carried on a ruse

throughout the pendency of these proceedings that she was neither living with nor maintaining a relationship with [S.S.], who is the mother's *paramour* and C.D.'s alleged abuser. Under cross examination by the Department at the hearing for termination of parental rights, however, she admitted living with [S.S.] during the time her child has been in the Department's custody, which continued through the date of hearing.

Under the case plan, the mother was to have no contact with her paramour, [S.S.], who had been accused by the minor child of acts of sexual abuse, and as such, until this circumstance was ameliorated, reunification could not be undertaken.

The Court finds that the mother's actions in this regard, a knowing and willful violation of the case plan. Particularly, this is clearly a circumstance "... affecting the parent's ability to comply with the case plan for services..." [Article 1036C(3)] and a circumstance which demonstrates "[t]he parent's lack of substantial improvement in redressing the problems preventing reunification..." [Article 1306C(6)], and further evidences, "[t]he persistence of conditions that led to removal or similar potentially harmful conditions" [Article 1036 C(7)].

Concerning "the persistence of conditions ..." as it relates to the mother, at the outset of the child in need of care proceeding, when the verbal instanter order was sought, since there was no evidence of any complicity by the mother, pursuant to Article 617, 618 and 619 of the *Louisiana Children's Code*, the Court ordered that the mother be offered a restraining order against the subject paramour, which if accepted would avoid the necessity [of] the child's continued custody with the Department and facilitate return of the child to the mother, the least restrictive placement. The mother rebuffed the Department's attempt in this respect, maintaining her belief in her paramour's innocence, her lack of belief in her child's complaints, and refusal to give her child the benefit of any doubt. (Affidavit in Support of Instanter Order, 01-20-06).

Therefore, it is clear to this court, that the conditions of the mother that lead to the removal of the child, i.e. the mother's unwillingness to assure her child's safety and protection against any potential risk or threat of abuse, by subordinating her own self interest in maintaining and assuring a continuing dependent relationship with [S.S.], has persisted throughout the pendency of these proceedings, including the CINC proceeding. *Louisiana Children's Code*, Article 1036C(7).

Based on the same evidence and reasons, the mother has not demonstrated "substantial improvement" (herein any improvement) toward achieving independence, such as acquiring her own housing, without the presence of [S.S.], a critical step in redressing the problems preventing reunification. *Louisiana Children's Code*, Article 1036C(6).

4

In fact, the testimony at the hearing is that during this period the mother became pregnant and had given birth to [S.S.'s] child, a circumstance which further complicated the mother's ability to comply with the case plan in this respect.

The court approved case plan, orders that the mother make monthly monetary contributions of $100.00 per month for support of the minor child. The record evidence, including testimony of the case worker and mother establishes that the mother has made no monetary contributions toward the support of her child since 2006, which shows further lack of parental compliance with the case plan herein. *Louisiana Children's Code*, Article 1036C(4).

The record evidence shows the mother has failed on more than one occasion to comply with the required program of treatment and rehabilitation services proscribed by the case plan, *Louisiana Children's Code*, Article 1036C(5). After the mother attended her initial evaluation with Dr. Ed Bergeron, April 13, 2006, a program of treatment and rehabilitation was recommended and outlined in the case plan, in 2006 which among other things required that the mother undergo substance abuse evaluation, attend a support group held by Stuller Place for non abusing parents of sexually abused children, and parenting classes. Dr. Bergeron testified that recommended therapy with him was terminated by him for non compliance with attendance.

At the time of trial herein January 18, 2008, the mother by her own admission testified that she had not attended the support group, because she had tried on several occasions to schedule this by phone, but she was never able to have anyone answer the phone at Stuller Place, as well as, because the Department had not scheduled an appointment for her with Stuller Place. The case manager testified that it was the mother's responsibility to do so.

In this respect, this Court does not find the mother's testimony credible. In as much as it is not inconceivable that one may experience some difficulty in making telephone contact with such an agency, but considering the period of time the mother has had to make contact, even if it ultimately would have required an in person appearance by her to make first contact, considering what was at stake and the gravity of the situation, it is not sufficiently convincing to suggest that one had not undertaken this critical step toward reunification, because a local agency would not answer their phone, particularly considering the possible consequences, termination of parental rights. This is not significantly different than the excuse of the mother for missing one of her earlier appointments with Dr. Bergeron, "the Department failed to let her know where the state-provided transportation would be picking her up," and at which time the Court again admonished the mother, that it was her responsibility to attend to such matters. The Court finds this consistent with the mother's dependent personality traits, unwillingness and/or inability to assume responsibility for her duties and obligations as a

parent, and a failure to comply with the required program of treatment.

The same is true of her expectation that she receive full credit for attendance of parenting classes with "Extra Mile" that she did not complete, opting instead to leave employment and take a month's vacation to Virginia with friends, of which her caseworker testified.

For the foregoing reasons stated, this Court finds that the State has satisfied its burden to show by clear and convincing evidence there has been no substantial parental compliance with the case plan for services which has been previously filed by the Department and approved by the Court herein as necessary for the child's safe return.

## 3. Reasonable Expectation of Improvement in Condition/Conduct-Mother's.

When the ground for termination of parental rights is as proscribed by Article 1015(5) of the *Louisiana Children's Code*, the Department must prove by clear and convincing evidence that despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering both the age of the child and the child's need for a safe, stable and permanent home.

As to "earlier intervention," C.D. was placed in state custody January 19, 2006, by oral instanter order. On March 16, 2006, this Court approved the case plan dated March 8, 2006, which established a plan goal of reunification of the minor child with the mother, and which plan goal continued, until a termination of parental rights staffing was held February 14, 2007, and the child's goal was changed to adoption. By order of this Court's case review of July 19, 2007, adoption as the plan for permanent placement of the child was approved.

Article 1036D of the *Louisiana Children's Code* proscribes three sets of circumstances which may evidence a lack of "any reasonable expectation of significant improvement in the parent's conduct in the near future," under Article 1015(5). Applicable herein is Article 1036D(3), which provides, "[a]ny other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based on expert opinion or based upon an established pattern of behavior."

At the trial, the Department's psychologist, Dr. Bergeron testified that he had diagnosed the mother with a Personality Disorder, with Borderline Dependent traits, that in his opinion, such a disorder left untreated, without proper therapy, faced with a choice between her *paramour* and her child, she would not choose her child over her paramour. This is consistent with the circumstances of this case since its outset. As mentioned earlier, at the time the Department sought a verbal instanter order, the Court insisted that the mother be offered a

less restrictive alternative, particularly, as a non offending parent, she was offered and refused the alternative of keeping custody of the subject child, but with a restraining order against the paramour. This position was maintained throughout the pendency of these proceedings. Knowing that one of the conditions that had to be corrected, before reunification could occur was to provide a home and a safe environment for the child, free of any contact with her paramour, yet the mother continued her dependent relationship with her paramour, under the same roof.

The Court did not have the opportunity to decide the factual issue of whether the mother's paramour molested the subject child. This, however, is not necessary to reach a decision in this case, and apparently, is what the mother has been unable or unwilling to understand. Her duty and obligation is first and foremost to her child. In this regard the Court questioned Dr. Bergeron, with respect to what adverse impact might there be caused to the child by the mother's failure to err on the side of caution to protect her child, without regard to whether the allegations against the paramour were true. Dr. Bergeron felt that the mother's failure to protect the child could impair the child's ability to trust her mother with her safety. It is well known that the basis of the bond, between a child and their primary caregiver for which a child depends for their perception of safety, love and healthy emotional growth is trust.

Dr. Bergeron felt that the mother would require at least 24 weeks of therapy with her hard work to realize improvement. This of course assumes the mother's active participation and desire to improve. Herein, Dr. Bergeron had to terminate the mother's therapy on two occasions, at the very beginning of therapy.

The mother started individual psychotherapy with Jerelyn Miles, LCSW on January 22, 2007, more than a year after her child had been removed and placed in the custody of the Department. By April, 2007, the mother had completed seven of eight sessions of the first part of her treatment plan, but then requested that treatment be suspended, until the birth of the child she and her paramour were expecting that month. According to Ms. Miles' testimony, the mother was supposed to contact her for another appointment after the birth of her child, but had not done so at the time of the trial of this matter.

C.D. was eight years of age (D.O.B.: 7-11-99) at the time of trial, and has been in a safe, stable and loving environment for two years, having been placed with her maternal aunt.

Considering both the expert opinion in this case and the mother's established pattern of dependent behavior, particularly the mother's ongoing dependency on her *paramour*, and the birth of a child of her *paramour*, as well as, the subject child's age and having established a close bond with her current caregivers over the past two years, and the

mother's failure to show any significant improvement over the past two years, this Court is unable to find any real likelihood, and particularly, from the child's perspective, no reasonable expectation, of significant improvement in the mother's condition or conduct in the near future, considering she has been in the care of her aunt for one fourth of her young life, as well as, her need for a safe, stable and permanent home. Not only would it not be in the child's best interests, but allowing the mother further time necessary to put her life in proper order, so as to facilitate re-unification or any other alternative, except termination, would be detrimental to the health and welfare of this child.

Therefore, it is the finding of this Court, as provided by Article 1015(5) of the *Louisiana Children's Code*, there is no reasonable expectation of significant improvement in the mother's condition or conduct in the near future, considering the child's age and her need for a safe, stable, and permanent home, within the parameters of Articles 1036D, and for the foregoing reasons, this Court finds that the Department has proved the grounds set forth at Article 1015(5) by clear and convincing evidence.

**4. Child's Best Interests-Termination Mother's Parental Rights.**

Where the court has found a ground under Article 1015 proved by clear and convincing evidence, before it may grant the relief sought, herein termination of [A.D.'s] parental rights, it must also determine whether such termination is in the child's best interests. LA-Ch.C. Article 1037B. Thus, under the law applicable at present, the Court is now mandated to terminate parental rights, unless based on all the evidence, the Court finds that the child's best interest would not be served.

As recognized by this state's highest court in *State ex. rel. A.T.*, 936 So.2d 79 (La. 2006), "Permanent termination of the legal relationship existing between natural parents and their children is one of the most drastic actions the State can take against its citizens." The Supreme Court went on the conclude, "[h]owever, the primary concern of the Courts and the State remains to secure the best interests for the child, including termination of parental rights if justifiable statutory grounds exist and are proven."

This Court finds, just as a parent's own selfish wants and desires must give way to the paramount interests and needs of their child in matters of the child's health, safety and well being, so shall it be in deciding whether to terminate the mother's rights to her child, herein. The child's best interests are paramount.

Herein, eight year old C.D. has been in the physical custody of her maternal aunt and uncle by marriage over the past two years, with whom she has apparently developed a close and loving relationship. The child's caseworker, Ms. Raguelle Hughes, testified that C.D. is

bonded to her maternal aunt and expresses the desire to be adopted by her. Ms. Hughes also testified that C.D. has indicated she does not want to return to her mother due to her fear of her mother's *paramour*. Furthermore, the child's maternal aunt and her husband, [V. and A.M.] are interested in adopting C.D. Therefore, inasmuch as the child's expressed desires are certainly not dispositive of the issue, the court has considered the child's wishes and found her best interests would be served by a judgment which has the effect of granting her wishes.

Considering C.D.'s best interests, including her tender age, the safe, stable and bonded attachment to [V. and A.M.] she has developed over the past two years, as well as, her stated fears and desires and need for a safe, stable, and permanent home, this Court can not say that based on all the evidence that termination of [A.D.'s] parental rights would not serve C.D.'s best interests. This Court finds instead that the contrary in supported by such termination.

Therefore, this Court finds that termination of [A.D.'s] parental rights is necessary to secure C.D.'s best interests, to include certification of C.D. for adoption and her continued custody with [V. and A.M.]. Furthermore, termination is in the child's best interests for reasons set forth in the immediately preceding subsection A.3. of these reasons.

**DECREE**

The judgment of the trial court in favor of the State is affirmed at appellant's costs.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.

9