# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-114

## STATE IN THE INTEREST OF A.B.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC-2013753
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Leanna Duncan**
**Jane Hogan**
**Public Defender's Office, Fifteenth Judicial District**
**P.O. Box 3622**
**Lafayette, LA 70502**
**(337) 232-9345**
**COUNSEL FOR APPELLANT:**
    L.H. (mother)

**Lloyd Dangerfield**
**Public Defender's Office, Fifteenth Judicial District**
**P.O. Box 3622**
**Lafayette, LA 70502**
**(337) 232-9345**
**COUNSEL FOR APPELLEE:**
    B.B. (father)

**Diane Cote**
**825 Kaliste Saloom Road**
**Brandywine III, Suite 150**
**Lafayette, LA 70508**
**(337) 262-5913**
**COUNSEL FOR APPELLEE:**
 **State of Louisiana,**
  **Department of Children & Family Services**

**Franchesca L. Hamilton-Acker**
**Acadiana Legal Services**
**P. O. Box 4823**
**Lafayette, LA 70502-4823**
**(337) 237-4320**
**COUNSEL FOR APPELLEE:**
 **A.B. (child)**

**Keith Stutes**
**District Attorney, Fifteenth Judicial District**
**Tracey Davenport-McGraw**
**Assistant District Attorney**
**P. O. Box 3306**
**Lafayette, LA 70502**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
 **State of Louisiana**

**GREMILLION, Judge.**

The mother, L.H., appeals the trial court's ruling terminating her parental rights to her child, A.B., born November 3, 2010.[1] For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 22, 2013, the State of Louisiana filed a petition alleging that A.B. was in need of care due to neglect by his mother because of her substance-abuse issues. The petition alleged that L.H. had positive drug screens for cocaine and amphetamines, and A.B., only two years old at the time, would leave his home and go to a neighbor's house without L.H.'s knowledge.

L.H. initially refused to cooperate with the Department of Children and Family Services (DCFS) and, therefore, L.H. appeared before the juvenile court at an answer hearing on August 6, 2013, at which time she was advised that if she tested positive for drugs again during the course of the supervision, A.B. would be removed from her custody. On August 22, 2013, L.H. tested positive for cocaine. A.B. was removed from L.H.'s custody on August 29, 2013, by DCFS, and adjudicated in need of care in October 2013. A.B. has remained in DCFS's care ever since.

DCFS created a comprehensive and detailed case plan for L.H. setting forth requirements for reunification pertaining to housing, food, basic needs, the physical and mental health of the parent, parental substance abuse, and the physical and mental health of A.B., among other things. Routine review hearings were held to apprise the trial court of the status of A.B. and L.H.

---

[1] Pursuant to Uniform Rules—Courts of Appeal, Rule 5-2, initials are used throughout to protect the identity of the minor.

DCFS filed a petition for termination of parental rights and certification for adoption on June 2, 2015. The trial court signed an order terminating L.H.'s parental rights on November 16, 2015. L.H. now appeals and assigns as error:

> The juvenile court erred in terminating the parental rights of L.H. because the State failed to show by clear and convincing evidence that L.H. did not substantially comply with her case plan, that there was no reasonable likelihood of her compliance in the near future, and that termination was in the best interest of the child.

## LAW AND DISCUSSION

We have stated that "[p]arental rights to the care, custody, and management of children is a fundamental liberty interest warranting great deference and vigilant protection under the law." *In re J.K.*, 97-336, p. 4 (La.App. 3 Cir. 10/29/97), 702 So.2d 1154, 1156. *See also Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388 (1982). Accordingly, a parent has a strong interest in the accuracy of a decision to terminate her rights. *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 101 S.Ct. 2153 (1981). Thus, the Louisiana legislature has imposed strict standards that require the State to prove, by clear and convincing evidence, the grounds for termination under La.Ch.Code art. 1015 before a judgment can be issued terminating parental rights. *In re J.K.*, 702 So.2d 1154.

This analysis requires a balancing of the child's interests and the parent's interests; however, it has been repeatedly held that the interests of the child are paramount to those of the parent. *State ex rel. J.A.*, 99-2905 (La. 1/12/00), 752 So.2d 806. In that case, the supreme court stated:

> The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not

2

whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven. Nonetheless, courts must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens.

*Id.* at 811 (citation omitted).

The trial court's decision to terminate parental rights will not be reversed by the appellate court unless it is manifestly erroneous or clearly wrong. *In re V.F.R.*, 01-1041 (La.App. 3 Cir. 2/13/02), 815 So.2d 1035, *writ denied*, 02-797 (La. 4/12/02), 813 So.2d 412.

Louisiana Children's Code Article 1015(4) sets forth the following as grounds for termination of a parent's rights to her child:

> Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
> (a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child's parents continue to be unknown.
>
> (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
>
> (c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

Louisiana Children's Code Article 1015(5) sets forth another ground for involuntary termination of a parent's rights to her child:

> Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the

department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

Louisiana Children's Code Article 1036(C) states:

Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:

(1) The parent's failure to attend court-approved scheduled visitations with the child.

(2) The parent's failure to communicate with the child.

(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

The evidence at trial included DCFS's records and testimony of various witnesses. The significant aspect of L.H.'s plan was to remain drug-free. DCFS's paper trail documenting this case includes the following drug screen results:

9/08/2014- Refusal
9/22/2014- Positive for cocaine
9/29/2014- Refusal
12/15/2014- Urine negative; hair positive for cocaine & amphetamines
1/26/2015- Positive for amphetamines & methamphetamines
3/23/2015- Refusal
3/30/2015- Refused to complete a hair screen; urine positive for amphetamines & methamphetamines

4

4/6/2015- Positive for amphetamines & methamphetamines
4/20/2015- [L.H.] referred to SECON for a drug screen. She stated that the screen would come back "dirty." Positive for amphetamines & methamphetamines
5/26/2015- Positive for amphetamines & methamphetamines
5/21/2015- Refusal
6/22/2015- Refusal
7/6/2015- Refusal
7/13/2015- Refusal/no show
7/20/2015- Did not compete/refusal

Chasity Harding, Child Welfare Supervisor, testified to how A.B. came into the State's care and to the components of L.H.'s case plan. Harding said that L.H. has failed to maintain a drug-free home and has been in and out of various drug treatment programs. L.H. entered a drug-treatment program in October 2013 but left against medical advice in November 2013. She completed a three-week inpatient treatment program in June 2014, but did not participate in aftercare. Harding said that L.H. relapsed and was seen again by Tyler Behavioral Health but that she was non-compliant, only attending classes sporadically. In July and August of 2015 she went to another treatment program but left against medical advice. She was referred for two other assessments in August 2015, but not accepted by either due to her case being open for two years.

Harding testified that L.H. had recently applied to return to Pathways for treatment, but she had not been accepted. Her most recent drug screens since the latest case report to the trial court were on August 17, 2015, for which she did not show up, September 17, 2015 in which she tested positive for amphetamines and methamphetamines, and October 15, 2015 in which she refused the test. Harding testified that L.H. knew that a refusal is deemed positive per DCFS policy. Harding said that L.H. has never provided proof of employment or paid her

parental contributions but she had been compliant in visitation. L.H. further had not been compliant in attending anger management classes for a second time.

Harding said that A.B. is doing well in his foster family and that he has a structured living environment with chores and a set bedtime. Harding further testified that L.H.'s rights to her three older biological children had been terminated by the state of California due to substance abuse. She said that the conditions that led to the removal of A.B. from the home persist. However, she did note that L.H. has a bond with A.B. and "interacts really well with him during the visits. She's one of my only parents that brings activities for [A.B.] to do. You can see that she does love [A.B.], and [A.B.] does love her as well."

L.H. admitted that she has been unable to comply with the requirement of her plan that she stop abusing substances. She said:

> I've been an addict for twenty-five (25) years. (Witness crying.) It's in my family. And there's been times where I've had four (4) years clean, twice. I've had two (2) years clean multiple times. And I'm just – I'm trying to do everything that I can. I meet with my sponsor everyday, I call her everyday now.

However, when asked if she would pass a drug screen if it were given the day of the hearing, she said she would not and that she continues to use methamphetamines and amphetamines. Nevertheless, she said she would do "whatever it has to take."

The trial court terminated L.H.'s parental rights finding that the State met its burden by clear and convincing evidence that pursuant to La.Ch.Code art. 1015(5):

> [L.H.] ha[s] failed to substantially comply with [her] . . . case plan[] including but not limited to failing to complete substance abuse treatment, after care and failing to maintain sobriety, . . . and lack of substantial improvement in redressing the problems preventing reunification; that there is no reasonable expectation of significant improvement in [L.H.'s] condition or conduct in the near future; and,

6

that the termination of parental rights is in the best interest of the minor child, [A.B.][.]

We find no manifest error in that finding. As in many of the cases of termination that come before us, we have a drug-addicted parent who failed to comply with the case plan but makes last-ditch claims that she will do so. This is too little, too late. L.H., by her own admission, has been a drug-addict for twenty-five years and lost custody of three other children as well. L.H. had over two years to take advantage of the state's free drug treatment, but failed. She continues to abuse drugs. As a child remains in stable care for longer and longer periods of time, it becomes far less likely that a parent is going to be given unlimited chances to get their substance abuse issues under control because it is not in a child's best interests to be in limbo while their parent continually returns to abusing drugs. Accordingly, there is no error in the trial court's judgment terminating L.H.'s rights to her son, A.B.

## CONCLUSION

The judgment of the trial court terminating L.H.'s parental rights is affirmed, and he is freed for adoption.

**AFFIRMED**.