## NOT DESIGNATED FOR PUBLICATION

### STATE OF LOUISIANA

### COURT OF APPEAL

### FIRST CIRCUIT

### 2022 CJ 0596

### STATE OF LOUISIANA IN THE INTEREST OF N.B.

*DATE OF JUDGMENT:* **DEC 1 6 2022**

ON APPEAL FROM THE TWENTY-SECOND JUDICIAL DISTRICT COURT
PARISH OF WASHINGTON, STATE OF LOUISIANA
NUMBER J-20-22

HONORABLE SCOTT GARDNER, JUDGE

\* \* \* \* \* \*

| | |
|---|---|
| Warren LeDoux Montgomery<br>District Attorney<br>Covington, Louisiana | Counsel for Appellee<br>State of Louisiana |
| Kimberly Debrock<br>Covington, Louisiana | Counsel for Appellee<br>Department of Children and<br>Family Services |
| Rebecca Henderson<br>Mandeville, Louisiana | Counsel for Appellee<br>N.B. - Minor Child |
| John T. Thomas<br>Franklinton, Louisiana | Counsel for Appellant<br>K.S. – Mother |
| Jane Hogan<br>Hammond, Louisiana | |

\* \* \* \* \* \*

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

Disposition: **RULE TO SHOW CAUSE RECALLED; APPEAL MAINTAINED; AND JUDGMENT AFFIRMED.**

Theriot, J. Concurs with reasons.

**Chutz, J.**

K.S.,[1] the biological mother of N.B., appeals a district court judgment terminating her parental rights to N.B. and certifying him free for adoption. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

N.B., born on June 23, 2016, is a special needs child born drug affected, testing positive for benzodiazepines and methadone. While still hospitalized, N.B. was diagnosed with neonatal abstinence syndrome, failure to thrive, and GERD. Additionally, N.B. has since been diagnosed with autism, global developmental delay, congenital nystagmus, oral aversion, sensory processing disorder, and developmental disorders of speech and language. Due to N.B.'s oral aversion, a gastrostomy feeding tube was placed in April 2018 in order for him to receive proper nutrition.

On April 25, 2021, N.B. was taken into state custody pursuant to an instanter order on allegations of dependency after K.S. was arrested for driving under the influence, third offense, while N.B. was in the vehicle. N.B.'s father, C.S., who has never had any contact with N.B., refused to take custody of the child.

After N.B. was taken into state custody, it was discovered he was medically neglected. At the time, he was a year and a half behind on his childhood immunizations and had missed dozens of therapy sessions for his autism and medical appointments for his various medical and developmental disabilities. N.B., who is non-verbal, was three-years old at the time and was not walking independently. Within several weeks of being placed in a foster home, with his foster parents working with him, N.B. was walking independently.

---

[1] Pursuant to Uniform Rules-Court of Appeal, Rule 5-1 and 502, the initials of the child and the parents are used to protect the identity of the minor child.

2

The Department of Children and Family Services (DCFS) developed K.S.'s initial case plan, dated May 18, 2020, with a goal of reunification. That case plan, as well as subsequent case plans approved by the district court, included among other requirements that K.S. pay $10.00 per month to DCFS for N.B.'s support and undergo a substance abuse evaluation and follow the resulting recommendations.

On August 14, 2020, N.B. was adjudicated a Child in Need of Care. On March 23, 2021, the attorney representing N.B. filed an expedited motion on behalf of N.B. to temporarily suspend K.S.'s overnight and extended visitations with N.B. It was alleged in the motion that despite repeated instruction K.S. overfed N.B., causing him to become sick, either over or under medicated N.B., failed to adhere to his sleep schedule, and failed to understand how the use of television and electronic devices by N.B. was ultimately detrimental to him, all of which had led to a regression in his behavior and an increase in tantrums and acts of self-harm by N.B. when he returned from overnight or extended visits with K.S. The district court granted the motion.

At a permanency hearing on June 1, 2021, the court granted DCFS's request to change the permanency goal from reunification to adoption. Subsequently, on November 3, 2021, DCFS filed a petition for termination of K.S.'s parental rights and to certify N.B. for adoption. The alleged grounds for termination were K.S.'s failure to provide significant contributions to N.B.'s support for a period in excess of six consecutive months and her failure to substantially comply with her case plan, primarily because she failed to follow the recommendations made as a result of her substance abuse evaluation.

Trial of this matter was held on February 11, 2022. At the conclusion of trial, the district court rendered an oral judgment terminating K.S.'s parental rights and freeing N.B. for adoption. The district court signed a written judgment in accordance

with its oral ruling on February 14, 2022.[2] Subsequently, the district court issued lengthy written reasons for judgment. K.S. has now appealed.

## RULE TO SHOW CAUSE

On July 21, 2022, this court *ex proprio motu* issued a Rule to Show Cause noting it was unable to determine the timeliness of this appeal or whether it was premature because the copies of the Motion for New Trial and Motion for Suspensive Appeal in the appellate record contained no legible date stamps showing the filing dates and there appeared to be no ruling on the Motion for New Trial. The parties were ordered to show cause by briefs whether or not the appeal should be dismissed.

Subsequently, the appellate record was supplemented by the Clerk of Court for the 22nd District Court with a copy of the Motion for New Trial with a legible date stamp showing it was filed on February 14, 2022. Under La. Ch.C. art. 332(C), the delay for applying for a new trial is three days, exclusive of holidays, from the mailing of notice of judgment. Thus, the motion was timely, since the notice of judgment was mailed on February 14, 2022. Further examination of the record revealed a minute entry stating the Motion for New Trial was denied on April 7, 2022.[3] Although the date stamp on K.S.'s Motion for Appeal is illegible, it is apparent the motion was timely filed within the fifteen-day appeal delay allowed under La. Ch.C. art. 332(A) because the order for appeal was signed by the district court on April 9, 2022, only two days after the denial of the Motion for New Trial.[4] Accordingly, we will recall the Rule to Show Cause and maintain this appeal.

---

[2] As requested in DCFS's petition to terminate parental rights, the district court also terminated C.S.'s parental rights. C.S. stipulated to the termination of his parental rights to N.B. and is not a party to this appeal.

[3] The record contains no written judgment denying the new trial. However, the denial of a motion for new trial may be made by minute entry and does not require a signed judgment. *Polk v. Buckhalter*, 18-0053 (La. App. 1st Cir. 9/24/18), 258 So.3d 816, 818 n.2.

[4] Under La. Ch.C. art. 332(A), when a motion for new trial is timely filed, the fifteen-day appeal delay commences upon the mailing of notice of the denial of the motion for new trial.

# LAW

The permanent termination of the parent-child legal relationship is one of the most drastic actions the State can take against its citizens. *State ex rel. A.T.*, 06-0501 (La. 7/6/06), 936 So.2d 79, 82. Parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children, warranting great deference and vigilant protection under the law. Due process requires that a fundamentally fair procedure be followed when the State seeks to terminate the parent-child legal relationship. *State ex rel L.B. v. G.B.B.*, 02-1715 (La. 12/4/02), 831 So.2d 918, 921. However, a child has a profound interest, often at odds with those of parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term and continuous relationships found in a home with proper parental care. In balancing these interests, the interests of the child are paramount over that of the parent. *State ex rel. L.B.*, 831 So.2d at 921.

Louisiana Children's Code article 1015 provides the statutory grounds for which a court may involuntarily terminate the rights and privileges of a parent. A two-pronged inquiry must be made in parental termination proceedings. First, the State must establish by clear and convincing evidence[5] every element of at least one ground for termination under Article 1015. See La. Ch.C. art. 1035(A); *State ex rel. L.B.*, 831 So.2d at 922. Second, but only after a ground for termination is established, the juvenile court must determine whether the termination is in the child's best interest. *State ex rel. L.B.*, 831 So.2d at 922; see also La. Ch.C. art. 1037(B). The manifest error standard is applicable in reviewing the factual findings of the juvenile trial court in determining whether the requirements of Article 1015

---

[5] Under the clear and convincing evidence standard, the existence of the disputed fact must be highly probable or much more probable than its nonexistence. *State in Interest of A.L.D.*, 18-1271 (La. 1/30/19), 263 So.3d 860, 863.

have been satisfied. *State ex rel. K.G.*, 02-2886 (La. 3/18/03), 841 So.2d 759, 762; *State ex rel. B.J.*, 00-1434 (La. App. 1st Cir. 7/27/00), 767 So.2d 869, 872. Therefore, before the juvenile court's findings may be reversed, an appellate court must find from the record that a reasonable factual basis does not exist for the court's findings and the record establishes they are clearly wrong (manifestly erroneous). *State in Interest of C.B. and B.M.*, 18-1403 (La. App. 1st Cir. 2/25/19) (unpublished), 2019 WL 927189, at *2, writ denied, 19-0495 (La. 5/20/19), 271 So.3d 1275.

## DISCUSSION

In the instant case, DCFS relied on two statutory grounds as the basis for termination of K.S.'s parental rights: (1) La. Ch.C. art. 1015(5)(b) (failure to provide financial support); and (2) La. Ch.C. art. 1015(6) (failure to substantially comply with case plans). In three assignments of error, K.S. argues the district court erred in finding DCFS established these two grounds for termination by clear and convincing evidence and in finding termination of her parental rights was in N.B.'s best interest.

*Failure to Provide Financial Support:*

Under Article 1015(5)(b), a parent's rights to a child may be terminated on the following ground:

> Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
> \*\*\*
> (b) As of the time the petition is filed, **the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.** (Emphasis added.)

Each of the case plans developed by DCFS, beginning with the first one dated May 18, 2020, required K.S. to contribute $10.00 per month to N.B.'s support. At trial, K.S.'s case manager, Alexandra Ward, testified K.S. made only three payments

6

after N.B. came into DCFS custody in April 2020: *i.e.*, $10.00 on June 1, 2020; $10.00 on July 1, 2020; and $120.00 on February 4, 2021. DCFS also introduced a printout from its accounts system verifying K.S. only made these three payments. Thus, from the time K.S. made a payment on February 4, 2021, until DCFS filed the petition to terminate parental rights on November 3, 2021, a period of nearly nine months, K.S. made no payments for N.B.'s support.

K.S. does not dispute she made no payments during this period. Instead, she argues the district court erred in finding abandonment was established by her failure to provide support when she paid DCFS $140.00 out of the total of $190.00 due ($10.00 x 19) during the nineteen months N.B. was in DCFS custody prior to the petition for termination. She asserts the total of $50.00 in monthly contributions she failed to make was a "negligible" amount. K.S. further argues her case manager never advised her that she was required to continue making parental contributions after DCFS changed the permanency goal from reunification to adoption. She testified she had only recently gotten out of rehab when the district court approved the goal change from reunification to adoption and she "was in no state at the time … to even be in court [as she] was."

These arguments lack merit. K.S. ignores the fact that she received copies of her case plans, each of which required her to contribute $10.00 *per month* to N.B.'s support. Moreover, her arguments ignore the natural obligation imposed upon her by La. C.C. art. 224 to support her child even apart from any requirement imposed by the case plans. See *State in Interest of C.B. and B.M.*, 2019 WL 927189, at *3; *State in Interest of T.J. and A.B.*, 48,612 (La. App. 2d Cir. 9/11/13), 124 So.3d 484, 489 n.11.

K.S. additionally contends that while she failed to make any monetary contributions during the nearly nine-month period from March to November 2021, she made in-kind contributions to N.B.'s support by providing him with clothes,

7

diapers, wipes, food, water bottles, books, and toys. She further contends the value of these in-kind contributions was well in excess of the $50.00 in required monthly payments she failed to make to DCFS. K.S.'s case manager verified that K.S. did make in-kind contributions for N.B. K.S. presented no evidence, however, to establish the quantity and frequency of her in-kind contributions, their monetary value, or when the contributions were made, particularly whether any contributions were made between March to November 2021.

Under the plain language of Article 1015(5)(b), the intent to permanently avoid parental responsibility is demonstrated by a parent's failure to provide significant contributions to their child's support for any period of six consecutive months. *State in Interest of H.R.*, 21-1328 (La. App. 1st Cir. 2/25/22), 341 So.3d 592, 599. The issue of whether K.S. made significant contributions to N.B.'s support, either monetary and/or in-kind, is a factual issue for the district court. See *State in Interest of T.A.G.*, 52,722 (La. App. 2d Cir. 4/10/19), 269 So.3d 1159, 1166-67; *State in Interest of J.K.*, 97-336 (La. App. 3d Cir. 10/29/97), 702 So.2d 1154, 1156. The district court found DCFS met its burden by clear and convincing evidence of establishing abandonment of N.B. pursuant to Article 1015(5)(b) due to K.S.'s failure to significantly contribute to N.B.'s support for a period well in excess of six consecutive months. Based on our review of the record, we find no manifest error in the district court's finding.[6]

*Failure to Substantially Comply with Case Plan:*

Under Article 1015(6), parental rights may be terminated on the following ground:

> ... at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been

---

[6] In brief, K.S. pointed out that while N.B. was in DCFS custody, DCFS received over $700.00 per month in SSI and child support benefits on his behalf. Since support provided to N.B. from sources other than K.S. does not satisfy her personal, parental obligation to contribute to N.B.'s support, this information is irrelevant to the matter at issue.

8

previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

Thus, for parental rights to be terminated under Article 1015(6), DCFS must establish: (1) a child has been removed from the parent's custody for at least one year; (2) DCFS's case plans were previously approved by the court as necessary for the safe return of the child; (3) the parent has not substantially complied with the court-approved case plans; and (4) there is no reasonable expectation of significant improvement in the parent's conduct in the near future. *State in Interest of T.L.*, 21-0728 (La. App. 1st Cir. 12/22/21), 340 So.3d 4, 11-12, writ denied, 22-00170 (La. 3/2/22), 333 So.3d 827.

In this case, N.B. was removed from K.S.'s custody when she was arrested on April 25, 2020. As of the time DCFS filed the petition to terminate parental rights, N.B had remained continuously in DCFS custody in excess of eighteen months. Further, DCFS developed several case plans for K.S., dated May 18, 2020, September 17, 2020,[7] and March 29, 2021, which were each approved by the district court. K.S. met a number of the requirements of her case plans, including taking parenting classes, attending a mental health evaluation, and submitting to random drug screens. Nevertheless, as previously discussed, she did not comply for a number of months with the requirement of paying $10.00 monthly for N.B.'s support. Additionally, the case plans required K.S. to undergo a substance abuse evaluation and to follow all recommendations made for treatment of her opioid addiction. As discussed below, K.S. failed to fully meet this requirement.

Louisiana Children's Code article 1036 governs proof of parental misconduct, and provides, in pertinent part:

---

[7] Although this DCFS case plan is actually dated September 17, 2020, it is elsewhere referred to as the September 16, 2020 case plan.

9

C. Under Article 1015(6), lack of parental compliance with a case plan may be evidenced by one or more of the following:

\*\*\*

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.
(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

\*\*\*

N.B. entered into DCFS custody due to K.S.'s ongoing substance abuse, culminating in her April 2020 arrest for third-offense DUI while N.B. was in the vehicle. At that time, K.S. had been on a methadone-treatment program with BAART (formerly Choices of Louisiana) for her opiate addiction since 2015. DCFS believed K.S. was not functioning well on that program, considering that her third-offense DUI arrest, as well as her medical neglect of N.B., all occurred while she was on that treatment program. Accordingly, the case plans developed by DCFS required K.S. to complete a new substance abuse assessment and follow the treatment recommendations.

On April 30, 2020, K.S. attended a substance abuse evaluation conducted by Chris Russell, LCSW, at Truth180. His resulting recommendation was for K.S. to attend detox, followed by inpatient treatment, which would make her eligible for the 22nd Judicial District Court Family Preservation Court. K.S. was resistant and refused to begin the recommended treatment. Subsequently, K.S. was referred to the Florida Parishes Health Services Authority (FPHSA) for consultation regarding an alternative medication assisted treatment (MAT) other than the methadone-treatment program at BAART. K.S. refused to move forward with an alternative treatment program, choosing to remain on her methadone-treatment program at BAART. Over a year after N.B. was taken into DCFS custody, K.S. did admit herself into an inpatient treatment facility, as recommended, and completed her stay.

Upon her release, however, she did not follow the recommendations made for her follow-up treatment.

On appeal, K.S. argues the district court erred in finding she failed to substantially comply with the case plans, in part because she "refused to wean herself off methadone" and failed to follow the substance abuse treatment recommended by Truth180. She contends the requirement for her to follow the recommended treatment, rather than continuing with her methadone-treatment program, violated the Americans with Disabilities Act (ADA) since she has been diagnosed with Opioid Use Disorder, a recognized disability, and methadone is a federally-recognized treatment for that condition. She contends DCFS's insistence that she pursue an alternate course of treatment discriminated against her on the basis of her disability and was contrary to her treating physician's medical advice. K.S.'s further contention that DCFS failed to make reasonable efforts to assist her in completing the case plans and reuniting with N.B. appears to be largely based on her assertion that DCFS failed to direct her to appropriate services for substance abuse treatment.

Although K.S. was in compliance with the requirements of the BAART methadone-treatment program, the circumstances undermine her argument that DCFS was unreasonable in not allowing her to continue with that program because she was stable and functioning well on the program. Specifically, the incident leading to N.B. being taken into custody, K.S.'s arrest for third-offense DUI while N.B. was in the vehicle, occurred while she was on the methadone-treatment program. Moreover, during the time N.B. was in DCFS custody, K.S. was arrested three more times for various offenses, including a charge of drug possession.[8] It was

---

[8] Another requirement of K.S.'s case plans that she failed to meet was the requirement that she take care of her criminal matters. At the time of K.S.'s initial May 18, 2020 case plan, she was faced with a charge of third-offense DUI as a result of the incident leading to N.B. being taken into custody. However, not only was that charge not resolved, but K.S. also was arrested three additional times during the time N.B. was in DCFS custody.

11

also while K.S. was on the methadone-treatment program that she medically neglected N.B. by allowing him to fall one and one-half years behind on his childhood immunizations and by missing dozens of appointments for his autism therapy and for treatment of his numerous medical conditions.

Under the circumstances, DCFS's conclusion that K.S. was not stable on that program and should undergo a new substance abuse assessment and follow the resulting recommendations was reasonable. Contrary to K.S.'s contentions, the record indicates the imposition of this requirement was based on K.S.'s behavior while on the methadone-treatment program rather than any discriminatory action by DCFS. Finally, although K.S. testified she received medical advice from her psychiatrist and others to stay on her methadone-treatment program rather than pursuing an alternative treatment program, she presented no evidence supporting her testimony. Based on our review of the record, we find no manifest error in the district court's finding that K.S. failed to substantially comply with the case plans by failing to follow the recommendations made for her substance abuse treatment.

The final requirement to prove a ground for termination under Article 1015(6), is to establish there is no reasonable expectation of significant improvement in the near future. In this case, K.S. met a number of the requirements of her case plans, including that she attend parenting classes, submit to a mental health evaluation, maintain contact with N.B., and submit to random drug screens. Nevertheless, she refused for a year after N.B. was taken from her custody to follow the recommendations made to her for inpatient substance-abuse treatment. Even though she eventually entered into and completed the recommended stay for inpatient treatment, she then declined to follow the recommended follow-up care. Additionally, she failed to make any of the $10.00 per month support payments required by the case plans from March to November 2021. Reformation sufficient to prevent termination of parental rights requires a parent to demonstrate a

12

substantial change, such as significantly altering or modifying the behavior that resulted in the removal of a child from the home. *State in Interest of T.L.*, 340 So.3d at 12.

From our review of the record, we cannot say the district court was manifestly erroneous in finding there was no reasonable expectation of significant improvement in K.S.'s conduct in the near future. Accordingly, the district court did not manifestly err in finding DCFS established a ground for termination under Article 1015(6) due to K.S.'s failure to substantially comply with her case plans.

## Best Interest of the Child:

Even after DCFS has met its burden of proving a statutory ground for termination under Article 1015, a court still should not terminate parental rights unless it determines the termination is in the child's best interest. La. Ch.C. art. 1037(B); *State in Interest of E.O.*, 18-1093 (La. App. 1st Cir. 2/6/19), 272 So.3d 552, 556. Herein, due to his autism and medical conditions, including the necessity for a feeding tube, N.B. is a special needs child with complicated care requirements and the need for a regimented schedule. In its written reasons for judgment, the district court made the following findings:

> The Child was first placed with a foster family who was familiar with the special needs of autistic children. That family succeeded in getting the Child to walk and to begin potty training. They worked very closely with the professionals to curtail the Child's tantrums and self-harming behaviors. Because of the Child's feeding tube, he required a regimented schedule of food, fluids, medications and sleep. The imposition of structure into the Child's life was significant in his improvement. The Mother, however, failed to abide by the schedules and treatments.
>
> The Mother insisted that the Child be exposed to electronics such as cell phones, television and tablets despite the fact that the Child's treatment team felt those devices were detrimental to his improvement. When he was presented with those electronic devices by the Mother during the case, his behavior deteriorated back to tantrums and self-harming actions such as head banging and biting. He would often make himself vomit causing further disruption to his school and foster family.

When visits were in the Mother's home, she often ignored all of the instructions she had been given and fed and medicated the Child incorrectly. She would contact the case worker sometimes several times a day requesting information about the Child's schedule about which she had been instructed several times previously. At one point the Child's attorney moved that visitation be curtailed. In that Motion filed in March, 2021 when the Child had been in care for almost a year, he was described as "completely reliant on having the television or some other device on and under his control during all his waking hours."

In [DCFS's] report of May 20, 2021 the Mother's behavior was described as follows: "[K.S.] fails to take accountability for her actions that lead [N.B.] into custody, and [has] not shown a behavior change consistent with reunification... she still fails to demonstrate the ability to fully meet [N.B.'s] extensive medical needs... fails to make [N.B.'s] education a priority... [and] does not implement the trainings at home."

As time went on problems arose in the necessary interaction between the Mother and foster family and that family asked that the Child be moved in April, 2021. Their problems were not with the Child but rather the Mother who seemed not to understand the concept of boundaries or the necessity of keeping to the Child's regimen that had resulted in his great improvement while in the care of this family. ... The Child was subsequently placed with another foster family which is committed to his care but does not want to adopt him. However, terminating the parents' rights would open up wider avenues to explore for an adoptive placement for the Child.

\*\*\*

... The Mother appears not to understand how to care for this very special needs Child so as to regain custody. She continues to place her own need above his and take her own path despite its negative consequences to the Child.

Based on the record, we find no manifest error in the district court's findings and determination that the termination of K.S.'s parental rights is in N.B.'s best interest. K.S. resisted or failed to comply with significant requirements of her case plans for over a year and a half after N.B. was taken into DCFS custody. Further, she has shown a lack of understanding of N.B.'s medical conditions and a continuing unwillingness or inability to sufficiently meet N.B.'s extensive special needs, including feeding and medicating him properly. Considering the evidence establishing both grounds for termination and that termination is in the best interest

14

of N.B., we find no error in the district court's judgment terminating K.S.'s parental rights and certifying N.B. as free for adoption.

## CONCLUSION

For the assigned reasons, the Rule to Show Cause issued on July 21, 2022, is recalled and this appeal is maintained. The February 14, 2022 judgment of the district court terminating K.S.'s parental rights to N.B. and certifying him for adoption is affirmed. All appeal costs are assessed to K.S.

**RULE TO SHOW CAUSE RECALLED; APPEAL MAINTAINED; AND JUDGMENT AFFIRMED.**